IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| MICHELLE KNIGHT and JEFFERY BARTH, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>ENBRIDGE PIPELINES (FSP) L.L.C. and )<br>CCPS TRANSPORTATION, LLC, )<br>)<br>Defendants. )<br>)<br>_____)<br>)<br>ENBRIDGE PIPELINES (FSP) L.L.C. and )<br>CCPS TRANSPORTATION, LLC, )<br>)<br>Counterclaimants, )<br>)<br>v. )<br>)<br>MICHELLE KNIGHT and )<br>JEFFERY BARTH, )<br>)<br>Counterdefendants. | Case No. 12-CV-01244 |

## ANSWER AND COUNTERCLAIM

Defendants Enbridge Pipelines (FSP) L.L.C. and CCPS Transportation, LLC ("Defendants") answer the complaint as follows:

**Complaint Paragraph 1.** "Plaintiff Michelle Knight is an individual who resides at 5324 Kettle View Court, Slinger, Wisconsin 53086."

**Answer 1.** Defendants admit this allegation.

**Complaint Paragraph 2.** "Plaintiff Jeffery Barth is an individual who resides at 6484 East 1600 North Road, Flanagan, Illinois 61740."

**Answer 2.** Defendants admit this allegation.

**Complaint Paragraph 3.** "The Defendant CCPS Transportation, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in the State of Texas. Its sole member is Enbridge Energy, Inc., a Delaware corporation with its principal place of business in the State of Texas."

**Answer 3.** Defendants admit this allegation except that they state that the correct name of said defendant's sole member is "Enbridge Energy Company, Inc."

**Complaint Paragraph 4.** "The Defendant Enbridge Pipelines (FSP), LLC is a limited liability company organized under the laws of the State of Delaware with a principal place of business in the State of Texas. Its sole member is CCPS Transportation, LLC, the other defendant."

**Answer 4.** Defendants admit this allegation.

**Complaint Paragraph 5.** "The amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs."

**Answer 5.** Defendants admit this allegation.

**Complaint Paragraph 6.** "This court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1)."

**Answer 6.** Defendants admit this allegation.

**Complaint Paragraph 7.** "Plaintiffs are siblings who together own an undivided interest in fee simple in a 40-acre farm described as the Southeast ¼ of the Northwest ¼ of Section 29, Township 28 North, Range 4 East of the Third Principal Meridian, Livingston County, Illinois."

**Answer 7.** Defendants admit this allegation.

**Complaint Paragraph 8.** "Plaintiffs are also successors in the ownership and operation of a family farm, which was established in 1944, where now the 4th generation of the family is actively working."

**Answer 8.** Defendants lack knowledge to admit or deny this allegation.

**Complaint Paragraph 9.** "The farm is a part of a larger family farm which is located generally on nearby farmland, owned by Plaintiffs' parents, an aunt, and long-term landlords who comprise an "extended family" and consider themselves an integral part of the family farm operation."

**Answer 9.** Defendants lack knowledge to admit or deny this allegation.

**Complaint Paragraph 10.** "In 1952, the Plaintiffs' predecessor in title conveyed to the Sinclair Pipe Line Company a blanket easement for the sum of $68.00, a copy of which is attached hereto as Exhibit A, for a single underground pipeline, later known as the Spearhead Pipeline, for the transportation of liquids or gases [energy products], in perpetuity, by the following grant contained in Exhibit A:

> FOR AND IN CONSIDERATION OF THE SUM OF Sixty-eight and no/100 DOLLARS, to the grantors paid, the receipt of which is hereby acknowledged, JAMES H. FERITER, a bachelor herein called Grantor, hereby grant unto SINCLAIR PIPE LINE COMPANY, a Delaware corporation, hereafter called Grantee, its successors and assigns, the right to lay, maintain, inspect, operate, protect, repair, replace and remove a pipe line for the transportation of liquids and/or gases on, over and through the following described land of which grantors warrant they are the owners in fee simple, situated in Livingston County, State of Illinois to wit: Southeast quarter of the Northwest quarter (SE/4 NW/4) of Section 29, Township 28 North, Range 4 East."

**Answer 10.** Defendants admit that in 1952 plaintiffs' predecessor in title executed the Right of Way grant attached to the complaint as Exhibit A, which granted and conveyed to Sinclair Pipeline Company all of the rights set forth therein. Defendants admit that the quoted language is excerpted from Exhibit A. Defendants deny any and all other allegations of this paragraph to the extent they are inconsistent with Exhibit A.

**Complaint Paragraph 11.** "The Spearhead Pipeline is a 22-inch underground pipeline which after many owners is now owned by the Defendant, CCPS Transportation, LLC."

**Answer 11.** Defendants admit that defendant CCPS Transportation, LLC is the owner of an underground pipeline now commonly referenced as the "Spearhead Pipeline" of various diameters, a section of which is located in the plaintiffs' above-referenced property. Defendants further admit that such ownership was obtained by purchase from and assignment by prior holders of the pipeline and the Right of Way grant alleged above.

**Complaint Paragraph 12.** "Both Defendants are members of a controlled group of interrelated companies in a complex corporate structure wholly owned and/or controlled by Enbridge, Inc., a Canadian corporation, [herein Enbridge] which is headquartered in Calgary, Alberta and was originally chartered many decades ago by the Board of Directors of the Imperial Oil Company, one of the many original Rockefeller oil companies."

**Answer 12.** Defendants admit that each is a subsidiary of Enbridge Inc., a Canadian corporation headquartered in Calgary, Alberta. Defendants deny any and all other allegations of this paragraph.

**Complaint Paragraph 13.** "The control center regulating the daily flow of product and pressure through the Enbridge Canadian and U.S. pipeline system is located in Edmonton, Alberta."

**Answer 13.** Defendants admit that the Enbridge System has a pipeline control center in Edmonton, Alberta, Canada. Defendants deny any and all other allegations of this paragraph 13.

**Complaint Paragraph 14.** "For its first 56 years in operation, the Spearhead Pipeline primarily delivered conventional crude oil from Cushing, Oklahoma to the BP refinery at Whiting, Indiana and the other two major crude oil refineries in the greater Chicago area."

**Answer 14.** Defendants lack knowledge to admit or deny this allegation.

**Complaint Paragraph 15.** "The conventional crude oil benchmark, West Texas Intermediate Crude [also known as Texas light sweet crude] has a low sulfur content and low viscosity [moves easily through a pipeline]."

**Answer 15.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 16.** "Conventional crude oil is also transported at the normal temperature of the subsoil which contains the pipeline."

**Answer 16.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 17.** "More recently, after the flow of the Spearhead Pipeline was reversed and a 42- inch pipeline was constructed by Enbridge from Edmonton, Alberta to Pontiac, Illinois, a manufactured energy product which is considered fungible with crude oil, known as dilbit, became an additional product delivered by the Spearhead Pipeline to Cushing, Oklahoma from the storage tank farm of Enbridge located at Pontiac, Illinois."

**Answer 17.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 18.** "The energy ingredient of dilbit is bitumen, which is not naturally in a liquid form but is blended with a diluent so it will flow in a pipeline something like a liquid."

**Answer 18.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 19.** "Diluent is generally an end-product of crude oil refining, is a highly flammable liquid, and in laymen's terms may be described as being like a paint thinner."

**Answer 19.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 20.** "Dilbit often has a sulfur content or sulfur gas associated with it, like other energy sources heavier than conventional crude oil."

**Answer 20.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 21.** "Dilbit is much thicker than conventional crude oil and has a high viscosity in comparison."

**Answer 21.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 22.** "Dilbit is also delivered by pipeline transportation at a temperature range of 100-150 degrees Fahrenheit in order to decrease its viscosity."

**Answer 22.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 23.** "The 30-foot width of the Exhibit A easement was established by use by the Amoco Oil Company prior to being acquired by the Defendant, CCPS Transportation, LLC."

**Answer 23.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 24.** "When the Exhibit A easement was made, the parties making it did not contemplate the construction of additional pipelines."

**Answer 24.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 25.** "When the Exhibit A easement was made, neither did the parties making it contemplate the unsafe conditions created for a farm, which would contain in its subsoil a large diameter, higher pressure pipeline operating at a temperature range of 100-150 degrees Fahrenheit, which is now an industry standard, but not commonly used in 1952."

**Answer 25.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 26.** "The high pressure, high temperature pipeline carrying a hazardous material has been recently introduced into the U.S.A. by the Canadian owned pipeline companies."

**Answer 26.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 27.** "The following provision of the Exhibit A easement further establishes that a large diameter, high pressure pipeline operating at 100-150 degrees Fahrenheit was not contemplated in 1952:

> The one additional pipe line which grantor hereinbefore gives and grants unto the grantee the right of way to construct and operate shall be laid parallel with the first or original pipe line and at no place more than 10 feet from said original pipe line."

**Answer 27.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 28.** "When the Exhibit A easement was made, neither did the parties making it contemplate the easement being used to deliver dilbit, often accompanied by a highly flammable sulfur-based lethal gas, which during any pipeline leak could cause immediate human harm if the sulfur-based lethal gas is inhaled or the dilbit is ignited."

**Answer 28.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 29.** "The ignition of the dilbit could cause a catastrophic explosion in a several hundred-foot radius around the pipeline, creating a crater on the surface of the land and vaporizing human life and homes or other farm buildings within the radius."

**Answer 29.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 30.** "In late December 2011, the Defendant, Enbridge Pipelines (FSP), LLC, announced its decision to construct a 36-inch high pressure pipeline from Pontiac, Illinois to Cushing, Oklahoma along the existing route of the Spearhead Pipeline, to be called the Flanagan South Pipeline."

**Answer 30.** Defendants admit the allegations of this paragraph but deny the characterization of "high pressure pipeline."

**Complaint Paragraph 31.** "The Flanagan South Pipeline project is estimated to cost 2.8 billion dollars and upon completion will have the capacity to deliver along a 600-mile plus route a daily load of up to one million barrels of dilbit, or other raw petroleum products, to Enbridge's massive crude oil hub in Cushing, Oklahoma."

**Answer 31.** Defendants admit that the estimated construction cost of the Flanagan South Pipeline Project is approximately $2.8 billion dollars, that the estimate length of the pipeline route exceeds 600 miles, that the pipeline will transport liquid crude petroleum to Cushing, Oklahoma, and that their affiliates own petroleum transportation and storage facilities in Cushing, Oklahoma. Defendants deny any and all other allegations of this paragraph.

**Complaint Paragraph 32.** "From Cushing, the route continues another 500 miles to the United States Gulf Coastal city of Port Arthur, Texas, in a large, high-pressure pipeline which Enbridge acquired in the latter part of 2011, and then after reversing its flow, further

6

increased the pressure in this pipe for use in delivering liquid unrefined energy products to the Gulf of Mexico."

**Answer 32.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 33.** "There is presently a glut of crude petroleum in the Midwestern USA due to the increased availability of dilbit from Northern Alberta, Canada and the increased production of conventional crude oil from the Williston Basin [North Dakota], both sources being directed by substantial existing pipeline infrastructures to Pontiac, Illinois."

**Answer 33.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 34.** "The Flanagan South Pipeline will help relieve the Midwest glut of crude petroleum by making it available for export, or in the alternative, making it available for refining and the subsequent export of refined petroleum."

**Answer 34.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 35.** "Reaching the Gulf Coast area creates the flexibility for the dilbit to be delivered to any of the 30 crude oil refineries in the Greater Gulf Coast area, and also for export by ocean tanker to distant countries like China."

**Answer 35.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 36.** "The USA is currently a net exporter of refined petroleum."

**Answer 36.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 37.** "The Gulf Coast area has long been a highly valued destination of Enbridge because the dilbit has a market value greater there than in Canada when including the transportation cost, which creates an additional value known as 'netback.'"

**Answer 37.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 38.** "Netback often has a range of between $10.00 to $45.00 per barrel, which will increase the sales price to the Canadian sellers of dilbit in a range of $800,000.00 to $3,000,000.00 per day when the Flanagan South Pipeline is functional."

**Answer 38.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 39.** "The effect of netback is an increase in the value of the sand tar deposit in Northern Alberta, Canada by trillions of dollars, but creates little, if any, reduction in the domestic price of gasoline at the retail level in the USA."

**Answer 39.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 40.** "The key provisions of the Exhibit A easement being relied on by the Defendant, Enbridge Pipelines (FSP), LLC, for a right to construct a second pipeline include the following:

> As a part of the consideration hereinabove set forth Grantor hereby grant unto said Grantee the right at any time or times to construct and operate one additional pipe line alongside of said first pipe line on, over and through said land, and Grantee agrees to pay Grantor for said additional pipe line so placed the sum of Sixty-eight & no/100 Dollars, on or before the time Grantee commences to construct such pipe line on the land hereinabove described. Said additional line to be subject to the same rights, privileges and conditions as the original line.
>
> Grantee shall have the right to change the size of its pipes, the damages, if any, in making such change to be paid by the said grantee.
>
> ■ ■ ■ ■
>
> The rights herein granted may be assigned in whole or in part.
>
> The terms, conditions and provisions hereof shall extend to and be binding upon the heirs, executors, administrators, personal representatives, successors and assigns of the parties hereto."

**Answer 40.** Defendants admit that the quoted language is excerpted from Exhibit A. Defendants admit that Exhibit A grants the right to construct and operate a second pipeline in the plaintiffs' land identified above and state that the best evidence of the terms of the grant is Exhibit A itself. Defendants deny any and all other allegations of this paragraph.

**Complaint Paragraph 41.** "Although the manner in which the purported right to construct a second pipeline will be transferred from the Defendant, CCPS Transportation, LLC, to the Defendant, Enbridge Pipelines (FSP), LLC, has yet to be announced or disclosed, the Exhibit A easement may be assigned in whole or in part."

**Answer 41.** Defendants admit that the rights conveyed by the Right of Way grant referenced as Exhibit A may be assigned in whole or in part and that Defendant CCPS Transportation, LLC has announced it will assign rights it holds to defendant Enbridge Pipelines (FSP) L.L.C. Defendants deny any and all other allegations of this paragraph.

**Complaint Paragraph 42.** The Plaintiffs' farm will have three active pipelines owned by three different Enbridge entities, creating a much higher safety risk to the Plaintiffs, their family members, and their landlords, when the Flanagan South Pipeline and the recently announced Southern Access Extension Pipeline [another Enbridge project explained *infra*] are completed."

**Answer 42.** Defendants admit that subsequent to completion of the Flanagan South Pipeline Project each defendant will own and operate a pipeline section traversing plaintiffs' property referenced above. Defendants deny any and all other allegations of this paragraph.

**Complaint Paragraph 43.** "The farms operated by Plaintiffs have two modern, well-maintained homes and other farm improvements which are fully functional and productive, creating constant, normal human existence within an ultra-hazardous danger zone which the Flanagan South Pipeline would create."

**Answer 43.** Defendants lack knowledge to admit or deny the allegations of this paragraph concerning plaintiffs' homes, attributes, and characteristics. Defendants deny any and all other allegations of this paragraph.

**Complaint Paragraph 44.** "The Defendant, Enbridge Pipelines (FSP), LLC, has proceeded with its plans to construct the Flanagan South Pipeline, including the filing of multiple applications to several units of government located in the USA and holding a successful "open season" for Canadian shippers to measure the demand for the use of the proposed pipeline."

**Answer 44.** Defendants admit the allegations of this paragraph.

**Complaint Paragraph 45.** "The Defendant, Enbridge Pipelines (FSP), LLC, has also been communicating with Plaintiffs, not through its employees, but rather through a sales force, provided by a right-of-way acquisition company, which has contracted with Enbridge to provide a temporary team of experienced salespeople for acquiring farm owner consents pertaining to construction of the second pipeline."

**Answer 45.** Defendants admit that professional right-of-way agents retained by Enbridge Pipelines (FSP) L.L.C. have communicated with plaintiffs. Defendants deny any and all other allegations of this paragraph, specifically including the mischaracterization of the agents as "salespeople."

**Complaint Paragraph 46.** "One of the many applications made by the Defendant, Enbridge Pipelines (FSP), LLC, was to the Illinois Commerce Commission for the purpose of

9

obtaining eminent domain, so that it can secure a continuous right-of-way for the entire route from Pontiac, Illinois to the Mississippi River."

**Answer 46.** Defendants admit that an application has been submitted to the Illinois Commerce Commission pursuant to the law of Illinois by defendant Enbridge Pipelines (FSP) L.L.C. and that the application *inter alia* seeks authority to exercise the power of eminent domain pursuant to Illinois law. Defendants deny any and all other allegations of this paragraph.

**Complaint Paragraph 47.** "According to the Defendant, Enbridge Pipelines (FSP), LLC, in its Application being considered by the Illinois Commerce Commission, the power of eminent domain will be invoked when the Defendant considers it necessary."

**Answer 47.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 48.** "If granted, the power of eminent domain will be used to either create new easements or expand the existing pipeline easement in instances where the Defendant, Enbridge Pipelines (FSP), LLC, determines there are reluctant farm owners it has referred to as "holdouts" in its Application."

**Answer 48.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 49.** "A part of the Defendant Enbridge Pipelines (FSP), LLC's Flanagan South Pipeline Application with the Illinois Commerce Commission is a proposed easement it will be seeking through either the threat or exercise of eminent domain, a true and correct copy of Defendant's proposed easement being attached hereto as Exhibit B."

**Answer 49.** Defendants admit that Exhibit B to this complaint is a true and correct copy of a document submitted with the Illinois Commerce Commission application referenced above. Defendants deny any and all other allegations of this paragraph.

**Complaint Paragraph 50.** "The proposed Exhibit B easement is substantially more comprehensive and restrictive than the Exhibit A easement because the Exhibit B easement includes, among other things, the right to remove existing man-made structures, such as homes or farm buildings, which exist in the proposed new right-of-way."

**Answer 50.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 51.** "The Defendant, Enbridge Pipelines (FSP), LLC, need not now rely on the provision of the Exhibit A easement purporting to create a right to construct a second pipeline, since it will be able to expand its pipeline corridor using eminent domain."

**Answer 51.** Defendants deny the allegations of this paragraph.

10

**Complaint Paragraph 52.** "In addition to the Flanagan South Pipeline, the Defendant, Enbridge Pipelines (FSP), LLC, desires to construct in the future at least one additional pipeline through the farm of the Plaintiffs according to the July 9, 2012 letter from Enbridge, a true and correct copy being attached hereto as Exhibit C."

**Answer 52.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 53.** "The proposed route of the Southern Access Extension passes through Plaintiffs' farm parallel to the Spearhead Pipeline."

**Answer 53.** Defendants admit the allegations of this paragraph

**Complaint Paragraph 54.** "The Southern Access Extension Project was the subject matter of Enbridge's 2007 Application to the Illinois Commerce Commission [07-0446] which proposed a 36-inch high-pressure pipeline to be located parallel to the Spearhead Pipeline for several miles southwest of Pontiac, Illinois, crossing Plaintiffs' farm, before turning southerly toward Patoka, Illinois."

**Answer 54.** Defendants admit the allegations of this paragraph, but deny the characterization of "high-pressure pipeline."

**Complaint Paragraph 55.** "Enbridge's 2007 Application to the Illinois Commerce Commission [07-0446] was supported by the testimony of two highly ranked officers of Enbridge who said that the Spearhead easement would not be relied on for creating a new right-of-way parallel to the Spearhead Pipeline because the Spearhead Pipeline was owned by a separate, freestanding entity."

**Answer 55.** Defendants deny the allegations of this paragraph

**Complaint Paragraph 56.** "The Exhibit A easement was made without the threat of eminent domain."

**Answer 56.** Defendants lack knowledge to admit or deny the allegation of this paragraph.

**Complaint Paragraph 57.** "The Exhibit B easement describes the width of the newly proposed perpetual easement for the Flanagan South Pipeline Project to be 50 feet."

**Answer 57.** Defendants admit the allegations of this paragraph.

**Complaint Paragraph 58.** "The Exhibit B easement incorrectly suggests that the width of the Exhibit A easement is 50 feet."

**Answer 58.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 59.** "A true and correct copy of the proposed easement for the Southern Access Extension Pipeline is attached here as Exhibit D. The Exhibit D easement does not rely on any rights created by the Exhibit A easement."

**Answer 59.** Defendants admit that Exhibit D is a copy of a possible easement agreement for the Southern Access Extension Pipeline. Defendants admit that Exhibit A and Exhibit D are separate and independent documents. Defendants deny any and all other allegations of this paragraph.

**Complaint Paragraph 60.** "The Southern Access Extension Pipeline will transport dilbit with the identical safety concerns which surround the Flanagan South Pipeline."

**Answer 60.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 61.** "The purported perpetual existence of the right to construct an additional pipeline is void based on Illinois law in 1952, which prohibited perpetual options to acquire an interest in real estate and further prohibited perpetual preemptory rights in real estate which would create an unreasonable restraint on alienation."

**Answer 61.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 62.** "After a lapse of 60 years, the Exhibit A easement, unlike a taking under the threat of eminent domain, no longer provides for just compensation or what would today be considered reasonably adequate consideration, to be paid to Plaintiffs, for the right to construct an additional pipeline and the perpetual use of Plaintiffs' farm."

**Answer 62.** Defendants deny the allegations of this paragraph.

**Complaint Paragraph 63.** "An actual controversy now exists between Plaintiffs and Defendants regarding whether the provisions of the Exhibit A easement, which purports to create a perpetual right to construct the additional pipeline at issue, is void under Illinois law, and whether the grant created by the Exhibit A easement is limited to a 30-foot width."

**Answer 63.** Defendants admit that an actual controversy exists between these parties but deny any and all other allegations of this paragraph.

**Complaint Paragraph 64.** "Plaintiffs' therefore seek a declaration of their rights pursuant to 28 U.S.C. § 2201."

**Answer 64.** Defendants admit the allegations of this paragraph.

## AFFIRMATIVE DEFENSE

1. Plaintiffs' complaint fails to state a claim upon which relief can be granted.

WHEREFORE, Defendants Enbridge Pipelines (FSP) L.L.C. and CCPS Transportation, LLC pray for judgment in their favor dismissing the complaint with prejudice, awarding defendants their costs, and affording them such other relief as the Court finds just and reasonable.

## COUNTERCLAIM FOR DECLARATORY JUDGMENT

Defendants-Counterclaimants Enbridge Pipelines (FSP) L.L.C. ("FSP") and CCPS Transportation, LLC ("CCPS") hereby counterclaim against Plaintiffs-Counterdefendants Michelle Knight and Jeffrey Barth ("Landowners") as follows:

## JURISDICTION AND VENUE

1. Defendant-Counterclaimant Enbridge Pipelines (FSP) L.L.C. is a Delaware limited liability company with its principal place of business in Houston, Texas. The sole member of FSP is Defendant-Counterclaimant CCPS.

2. Defendant-Counterclaimant CCPS Transportation, LLC is a Delaware limited liability company with its principal place of business in Houston, Texas. The sole member of CCPS is Enbridge Energy Company, Inc., a Delaware corporation with its principal place of business in Houston, Texas.

3. Plaintiff-Counterdefendant Michelle Knight is a citizen of the State of Wisconsin. Plaintiff-Counterdefendant Jeffrey Barth is a citizen of the State of Illinois.

4. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(a)(1).

6. The land and the right of way at issue in this counterclaim are located in Livingston County, Illinois. Additionally, the Right of Way grant attached to the complaint as Exhibit A, which is hereby incorporated by reference in this counterclaim (hereafter "1952 Right of Way grant"), is recorded in Livingston County, Illinois. Venue is thus proper in this judicial district and division pursuant to 28 U.S.C. §1391(b)(2).

## FACTS

7. CCPS owns and operates as a common-carrier-by-pipeline an underground pipeline commonly referred to as the "Spearhead Pipeline," which is used for the interstate transportation of liquid crude petroleum. The Spearhead Pipeline is part of a larger pipeline network owned and operated by corporate affiliates of CCPS and known as the "Enbridge System," which is used for the international and interstate transportation of petroleum liquids. The Spearhead Pipeline runs from an Enbridge System facility near Pontiac, Illinois to another Enbridge System facility in Cushing, Oklahoma.

8. The Spearhead Pipeline crosses a parcel of land in Livingston County, Illinois that is currently owned by Landowners. The respective rights of the parties concerning that parcel of land are set forth on the face of the 1952 Right of Way grant. Landowners are the current successors to the grantor under that grant. CCPS is the current successor to the grantee under that grant.

9. Among the rights conveyed to the grantee and its successors and assigns by the 1952 Right of Way grant is the right to construct and operate a second underground pipeline on Landowners' land for the transportation of liquids and/or gases.

10. As part of a $2.8 billion expansion of the transport capacity of the Enbridge System, FSP is presently engaged in a project to build a new underground pipeline to transport liquid crude petroleum between the Enbridge System's Illinois and Oklahoma facilities. That new pipeline, to be known as the "Flanagan South Pipeline," will be installed in a route largely paralleling the route of the Spearhead Pipeline.

11. To facilitate construction and operation of the Flanagan South Pipeline, CCPS intends to utilize its rights under the 1952 Right Of Way grant to construct and operate a second underground pipeline on Landowners' land by assigning such rights to Enbridge Pipelines (FSP) LLC.

12. The plain language on the face of the 1952 Right Of Way grant authorizes the grantee and its successors and assigns, among other things, to construct a second pipeline of any size on Landowners' land for the transportation of liquids and/or gases; to change the size of its pipes; to operate, maintain, and protect such pipelines; and to have unimpaired access to them as well as ingress and egress rights over Landowners' land for all purposes necessary to the exercise of the rights granted by the 1952 Right Of Way grant.

13. Landowners contend, notwithstanding the clear and express terms of the 1952 Right Of Way grant, that they may block construction and operation of the Flanagan South Pipeline across their land. Landowners argue various purported legal theories for their effort to blockade this project, such as the Rule Against Perpetuities and "unreasonable restraint on alienation," none of which have merit.

14. If Landowners succeed in their effort to abrogate the terms of the 1952 Right Of Way grant and blockade the Flanagan South Pipeline, CCPS will be deprived of its express contractual right to construct a second pipeline on Landowners' land, its contribution to the Enbridge System expansion program represented by the Flanagan South Pipeline project will be substantially impaired, and FSP and its affiliates will be subjected to significant delay and large additional expenses in rerouting, designing, and constructing the Flanagan South Pipeline.

15. An actual controversy now exists between FSP and CCPS and Landowners concerning the validity, enforceability, and correct interpretation of the 1952 Right Of Way grant with respect to the construction and operation of the Flanagan South Pipeline across Landowners' land.

**RELIEF**

16. FSP and CCPS seek a declaration that the 1952 Right of Way grant is valid and enforceable according to its terms and that they possess and may enforce all of the rights granted to the grantee by the language of the 1952 Right of Way grant, including rights to lay, operate, maintain, and protect on Landowners' land a second pipeline for the transportation of liquids and/or gases of such size as CCPS or its assignees determines, as well as rights to enter and utilize such portions of the land as may be necessary for the exercise of the other rights granted.

WHEREFORE, Counterclaimants Enbridge Pipelines (FSP) L.L.C. and CCPS Transportation, LLC pray that the Court grant judgment in their favor as described above, award Counterclaimants their costs, and afford such other relief as the Court finds just and reasonable.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | ENBRIDGE PIPELINES (FSP) L.L.C. and CCPS TRANSPORTATION, LLC |
|  | By Their Attorneys: |
| Of Counsel: | Gerald A. Ambrose[*] |
| Joel W. Kanvik | John A. Heller |
| Director, U.S. Law | Sidley Austin LLP |
| Enbridge Energy Company, Inc. | One South Dearborn |
| 1409 Hammond Avenue | Chicago, Illinois 60603 |
| Superior, Wisconsin 54880 | 312-853-7000 |
| 715-398-4560 | gambrose@sidley.com |
|  | Thomas A. McConnaughay |
|  | Thomas W. O'Neal |
|  | Westerveld, Johnson, Nicoll |
|  |   & Keller, LLC |
|  | 411 Hamilton Boulevard, 14th Floor |
|  | Peoria, Illinois 61602 |
|  | 309-671-3550 |
|  | toneal@westerveldlaw.com |
| Dated:  August 7, 2012 | By: /s/  Gerald A. Ambrose |
|  |        One of the Attorneys for |
|  |        Defendants And Counterclaimants |

---

[*] LEAD COUNSEL PER LOCAL RULE 11.2.