IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| MICHELLE KNIGHT and JEFFERY BARTH, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ENBRIDGE PIPELINES (FSP) LLC and ) <br> CCPS TRANSPORTATION LLC, ) <br> ) <br> Defendants. ) <br> ) <br> ) <br> ) <br> ENBRIDGE PIPELINES (FSP) LLC and ) <br> CCPS TRANSPORTATION LLC, ) <br> ) <br> Counterclaimants, ) <br> ) <br> v. ) <br> ) <br> MICHELLE KNIGHT and ) <br> JEFFERY BARTH, ) <br> ) <br> Counterdefendants. | Case No. 12-CV-01244 |

**DEFENDANTS'-COUNTERCLAIMANTS' MEMORANDUM**
**IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants-Counterclaimants Enbridge Pipelines (FSP) LLC ("FSP") and CCPS Transportation LLC ("CCPS") state as follows in support of their motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

**Nature of the Case**

As shown by the pleadings (Complaint, d/e 1; Answer and Counterclaim d/e 5; and Answer to Counterclaim, d/e 11), this is a diversity action governed by the substantive law of Illinois. The parties seek mirror image declaratory judgments concerning a provision appearing

on the face of a pipeline right of way grant executed in 1952. That grant is attached to the complaint as Ex. A and is also incorporated by reference in the counterclaim. Counterclaim ¶6. Plaintiffs-Counterdefendants have admitted all material facts alleged in the counterclaim. No genuine issues of material fact remain in dispute. All that remains in contention under the pleadings are a handful of legal conclusions asserted by plaintiffs, and defendants are entitled to judgment as a matter of law on those legal issues.[1]

Plaintiffs admit that the grant is publicly recorded in Livingston Co., Illinois, that plaintiffs are the successors to the grantor, and that defendant CCPS is successor to the grantee. Answer to Counterclaim ¶¶6,8. On its face, the grant conveys to the "Grantee, its successors and assigns, the right to lay, maintain, inspect, operate, protect, repair, replace and remove a pipe line

---

[1] The customary application of Rule 12(c) is to dispose of a case on the basis of the underlying substantive merits when, based on the facts admitted in the pleadings, no genuine issue of material fact remains to be resolved and the movant is entitled to judgment as a matter of law. *E.g., Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993); *Cagan v. Intervest Midwest Real Estate Corp.*, 774 F. Supp. 1089, 1091 n.2 (N.D. Ill. 1991). "[T]he appropriate standard is that applicable to summary judgment, except the court may consider only the contents of the pleadings." *Alexander*, 994 F.2d at 336. All documents attached to the pleadings as exhibits are considered part of the pleadings for purposes of the motion. *Cagan*, 774 F. Supp. at 1091 n.2. Well-pleaded factual allegations in the non-moving party's pleading are taken as true for purposes of the motion; however, the court will not accept as true conclusions of law; facts which the court will take judicial notice are not true; legally impossible facts; facts which would be inadmissible in evidence in the event of a trial, nor facts which might appear by a record or document included in the pleadings to be unfounded. 5C Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Federal Practice and Procedure §1368 (3d ed. 2005). Additionally, "when a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations." *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 754, (7th Cir. 2002). An illustration of this latter principle appears in plaintiffs' complaint. They allege in paragraph 24: "When the Exhibit A easement was made, the parties making it did not contemplate the construction of additional pipelines." However, on the face of Exhibit A to their complaint the following language appears: "As part of the consideration hereinabove set forth Grantor hereby grant[s] unto said Grantee the right at any time or times *to construct and operate one additional pipe line* alongside of said first pipe line on, over and through said land" (emphasis added). This express grant of the right to construct an additional pipeline establishes that plaintiffs' contrary allegation in paragraph 24 is false. Indeed, the entire case revolves around the interpretation of this grant of the right to construct an additional pipeline. The court need not take as true for purposes of this motion plaintiffs' patently fraudulent assertion that construction of an additional pipeline was never contemplated at the time the grant was made.

for the transportation of liquids and/or gases on, over and through" plaintiffs' land. Plaintiffs admit that the present underground pipeline running across their land pursuant to this grant (known as the Spearhead Pipeline) is owned and operated by CCPS as a common carrier for the interstate transportation of liquid crude petroleum. Answer to Counterclaim ¶7. Plaintiffs admit that the Spearhead Pipeline is part of a larger pipeline network known as the Enbridge System, which is used for the international and interstate transportation of petroleum liquids. *Id*. Plaintiffs admit that as part of an ongoing $2.8 billion expansion of the Enbridge System defendant FSP is presently engaged in a project to build a new underground pipeline (to be known as the Flanagan South Pipeline) to transport liquid crude petroleum along a route largely paralleling the Spearhead Pipeline. Answer to Counterclaim ¶10. Plaintiffs admit that in order to facilitate FSP's construction and operation of this new pipeline to transport liquid crude petroleum, CCPS intends to assign to FSP its contractual rights under the grant "to construct and operate one additional pipe line alongside of said first pipe line on, over and through said land." Answer to Counterclaim ¶11.

This additional pipeline right is set forth on the face of the grant in the following language: "As part of the consideration hereinabove set forth Grantor hereby grant[s] unto said Grantee the right at any time or times to construct and operate one additional pipe line alongside of said first pipe line on, over and through said land." With respect to that additional line, the grant states, "[s]aid additional line to be subject to the same rights, privileges and conditions as the original line." The *only* limitation the original parties to the grant saw fit to place on the additional line when it was constructed in the future was that it "be laid parallel with the first or original pipe line and at no place more than 10 feet from said original pipe line." This clear and unambiguous contractual language is what this case is all about.  The issue before the court is

3

whether, as a matter of law, a grant of "the right at any time or times to construct and operate one additional pipe line alongside of said first pipe line on, over and through said land" allows defendants to do exactly that.

### **Plaintiffs' Arguments Against the Plain Language of the Grant Have No Merit**

Plaintiffs seek under various legal theories, s*ee* Complaint, p. 11, to overturn their predecessor's express conveyance to the grantee of the right to "construct and operate one additional pipe line," in an apparent effort to maneuver themselves into a position from which they can effectively hold hostage a key component of the ongoing $2.8 billion expansion of the Enbridge System by blocking construction of an additional pipeline adjacent to the existing Spearhead Pipeline across their land. They seek to obtain what is known in economics as "hold-up power," a species of monopoly power in which a single landowner whose property sits astride the route of a railroad or pipeline right of way is in a position to raise the cost of the entire development far above the opportunity cost of the land. *See* Richard A. Posner, *Economic Analysis of Law* 56-57 (7th ed. 2007). The wrinkle in this case is that plaintiffs seek to enlist this court to make them monopolists by rewriting the plain language of their predecessor's agreement. That, of course, is not a proper function of a court when interpreting a written instrument such as the grant at issue here. *See, e.g., Kham & Nate's Shoes v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir. 1990)("Unless pacts are enforced according to their terms, the institution of contract, with all the advantages private negotiation and agreement brings, is jeopardized").

### A. Rule Against Perpetuities

Plaintiffs argue that because the grant of a right to "construct and operate one additional pipe line" may be exercised by the grantee "at any time or times," that right did not vest when

the grant was executed in 1952 and is therefore void as a violation of the rule against perpetuities. Not surprisingly, since multiple line rights language like this has been commonplace in pipeline right of way grants for many decades, its validity has frequently been litigated and routinely upheld. As found by the court in *Stauch v. Coastal States Crude Gathering Co.*, 424 S.W. 677, 680 (Tex. App. 1968), when considering a rule against perpetuities argument identical to the one advanced by plaintiffs, "The courts have uniformly held against this contention." Similarly, applying Illinois law, the district court in *Belusko v. Phillips Petroleum Co.*, 198 F. Supp. 140 (S.D. Ill. 1961) *aff'd* 308 F.2d 832 (7th Cir. 1962), *cert. denied*, 372 U.S. 930 (1963), held that "[i]f the grant of this contract is broad enough in scope to encompass the right to lay the second pipe line, the fact that an exercise of that right might be delayed for a millennium would not bring the rule against perpetuities into play. On the contrary, that fact is a common incident of utility right of way grants. Such grants have been repeatedly interpreted as creating an expansible easement, i.e., a vested right to expand the user and to increase the burden upon the servient land as the needs of the holder of the easement might require." *Id.* at 144. *See also* the court's discussion of the inapplicability of the rule against perpetuities in the context of a 1903 grant of mining rights in *American Land Holdings v. Jobe*, 604 F.3d 451, 458 (7th Cir. 2010) ("There is a crucial difference between the going into effect of a granted right and the exercise of the right by its holder once it has gone into effect….[T]he right to mine (if only by underground mining) the coal under defendants' land took effect in 1903 and so would not have been forfeited even if the mining of the coal had not begun until 2000").

There is no violation of the rule against perpetuities in the grant at issue here.

**B. Restraint on Alienation**

Plaintiffs argue that the grant of a right to "construct and operate one additional pipe line" somehow constitutes an unreasonable restraint on alienation of their land and is therefore illegal under Illinois law. There is no law supporting this contention. As noted by the court in *Belusko*, a second pipeline right is a "common incident of utility right of way grants," and such properties regularly change hands in the marketplace. Nothing in the grant of a second line right restrains the owner of the servient estate from conveying his property to another, any more than the existence of any other easement in a property's chain of title prevents its conveyance.

The grant at issue here is publicly recorded and thus places all potential purchasers of the land on notice of its terms, including the grantee's right to construct an additional pipeline at any time. On its face, the grant imposes no restrictions on the landowners' ability to transfer their interest in the land. The existence of the grant in the chain of title merely means that any purchaser takes title subject to the right of way created by the grant, as well as the other terms therein. This is neither a restraint on alienation nor unreasonable. *See, e.g., Cagan v. Intervest Midwest Real Estate Corp.,* 774 F. Supp 1089 (N.D. Ill. 1991)("Restraints on alienation are not invalid per se under Illinois law").

**C. Grantor's Intent**

Plaintiffs argue that the proposed new pipeline will be unsafe and thus was not contemplated by the grantor when the grant was executed in 1952. Illinois law is clear on the manner in which courts must interpret documents such as the 1952 right of way grant at issue here. "A court interprets an easement in the same manner it would interpret any agreement between parties." *River's Edge Homeowners' Assoc. v. Naperville,* 819 N.E.2d 806, 809 (Ill. App. 2004). "[I]f the language of an agreement is facially unambiguous, then the trial court

interprets the contract as a matter of law without the use of extrinsic evidence." *Id.* "An agreement signed by the parties thereto speaks for itself, and the intention with which it was executed must be determined from the language in the agreement, without resort to extrinsic evidence. *Id.* "In applying this 'four corners rule,' a court initially looks to the language of the agreement alone…. If the language is unambiguous, then the trial court interprets the agreement without resort to parole evidence." *Id.* (citation omitted).

Plaintiffs do not suggest, nor could they in good faith, that the language in the grant conveying the right to construct and operate an additional pipeline is ambiguous. The grant first conveys a very broad right to construct and operate a pipeline "for the transportation of **liquids** and/or gases" (emphasis added). This is accompanied by a grant of the right thereafter "to construct and operate one additional pipe line alongside of said first pipe line… subject to the same rights, privileges and conditions as the original line." Plaintiffs have admitted that the proposed new, additional pipeline will be used "to transport **liquid** crude petroleum," Answer to Counterclaim ¶10 (emphasis added), the identical liquid which they also admit is currently being transported by the existing Spearhead Pipeline pursuant to the grant, Answer to Counterclaim ¶7. Accordingly, in the factual scenario that is now before the court on the parties' pleadings, it is undisputed that defendants are seeking to do precisely what the express language on the face of the 1952 grant gives them the right to do: construct and operate alongside the first pipeline that already exists across plaintiffs' land an additional pipeline for the transportation of **liquids**.

Plaintiffs' chief grievance seems to be that the grant contains no language making them the arbiters of exactly what kind of "liquid" may be transported.[2] They contend that the

---

[2] There is also some suggestion that plaintiffs believe they have a right to restrict the diameter of the pipelines installed under the grant. The grant deals with this issue as follows: "Grantee shall have the right to change the size of its pipes."

particular Canadian liquid crude petroleum that is to be transported by the new line is not safe enough to suit them and thus was not contemplated by the grantor in 1952. The answer to this is twofold.  First, when the original parties to the 1952 grant negotiated their agreement, they were free to insert whatever limitations and qualifications they desired concerning products that would be carried in the pipelines to be constructed and operated pursuant to the grant. Instead of including any such restrictions, however, they did what makes perfect economic sense: They elected to provide maximum flexibility for the future by using broad language stating that the pipelines installed pursuant to the grant could be used to transport *any* "liquids and/or gases," without limitation. It has been admitted by plaintiffs that the crude oil to be transported in the new pipeline is a "liquid." Answer to Counterclaim ¶10.  Hence, the new pipeline falls squarely within the unambiguous language used by the parties in the grant and it would be improper for a court 60 years after the fact to insert limitations that the parties elected to forego.

Second, the safe transportation by pipeline of hazardous liquids such as crude oil[3] is governed by a comprehensive, uniform national system of hazardous liquid pipeline safety regulations. That regulatory scheme preempts efforts to use state law to regulate safety. *E.g., Olympic Pipe Line Co. v. City of Seattle,* 437 F.3d 872 (9th Cir. 2006).  As that court explained: "Hazardous liquid pipelines run through 21 states, and presumably through small and large plots of land belonging to vast numbers of persons. Were each of these landowners entitled to demand compliance with their own safety standards, the clear Congressional goal of a national standard for hazardous liquid pipeline safety would be thwarted." *Id.* at 883. Given the law in this area, plaintiffs are not entitled in this case to rewrite the 1952 grant to impose their own safety standards and thereby single out and bar the transport of Canadian crude oil, as opposed to other

---

[3] Plaintiffs themselves characterize the liquid currently transported in the Spearhead Pipeline, and to be transported in the new line, as "fungible with crude oil." Complaint ¶17.

8

varieties of oil or other types of "liquids" that unquestionably would be permitted under the grant's clear and unambiguous language.

To appreciate the impossibility of the position in which these plaintiffs seek to place the court, it is necessary only to glance at 49 C.F.R. Part 195, entitled Transportation of Hazardous Liquids by Pipeline, the massive set of federal safety regulations that govern pipelines of the type at issue in this case (available online at http://ecfr.gpoaccess.gov/cgi/t/text/text-idx?c=ecfr&sid=c8e5fb7b607d25bfa7cadef3d17e39c8&rgn=div5&view=text&node=49:3.1.1.1.11&idno=49). In effect, simply because the original parties to the 1952 grant elected not to engage in the fruitless act of attempting to create their own private system of safety regulations in that instrument, the plaintiffs now seek to substitute for these federal regulations their own, entirely subjective views on pipeline safety (including what liquids and gasses may be transported) and to have this court employ Illinois law as a mechanism to enforce their dictates (and prohibitions) in place of the responsible federal officials such as the Secretary of the Department of Transportation. This is not a task properly undertaken by this court.

### D. Width of Easement

Plaintiffs argue that the width of the easement for the existing Spearhead Pipeline has been established by prior usage to be 30 feet. They contend this means it will be impossible to install an additional pipeline as otherwise allowed by the language of the grant. Even if the court takes this 30-foot width allegation as true, as required on a Rule 12(c) motion, it is no bar to installation of a second, adjacent pipeline. As the *Belusko* court explained, the grant gives defendants a "vested right to expand the user and to increase the burden upon the servient land as the needs of the holder of the easement might require." That is precisely what defendants intend to do in this situation by adding a new, additional pipeline. A 30-foot wide right of way for the

existing pipeline is no impediment to expansion of the easement to accommodate an additional line under the language of the grant.

                          ENBRIDGE PIPELINES (FSP) LLC and
                          CCPS TRANSPORTATION LLC

                          By Their Attorneys:

| Of Counsel: | Gerald A. Ambrose |
|---|---|
| Joel W. Kanvik | John A. Heller |
| Director, U.S. Law | Sidley Austin LLP |
| Enbridge Energy Company, Inc. | One South Dearborn |
| 1409 Hammond Avenue | Chicago, Illinois 60603 |
| Superior, Wisconsin 54880 | 312-853-7000 |
| 715-398-4560 | gambrose@sidley.com |
| | |
| | Thomas A. McConnaughay |
| | Christopher J. Spanos |
| | Westerveld, Johnson, Nicoll |
| |    & Keller, LLC |
| | 411 Hamilton Boulevard, 14th Floor |
| | Peoria, Illinois 61602 |
| | 309-671-3550 |
| | cspanos@wjnklaw.com |

                          By: /s/ <u>John A. Heller</u>
                                One of the Attorneys for
                                Defendants-Counterclaimants

Dated: September 28, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| MICHELLE KNIGHT and JEFFERY BARTH, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ENBRIDGE PIPELINES (FSP) LLC and ) <br> CCPS TRANSPORTATION LLC, ) <br> ) <br> Defendants. ) <br> ) <br> ) | Case No. 12-CV-01244 |

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

Mercer Turner
The Law Office of Mercer Turner, P.C.
202 North Prospect Road, Suite 202
Bloomington, IL 61704

                                            s/ John A. Heller
                                            One of the Attorneys for
                                            ENBRIDGE PIPELINES (FSP) LLC and
                                            CCPS TRANSPORTATION LLC
                                            Sidley Austin LLP
                                            One South Dearborn Street
                                            Telephone: (312) 853-7704
                                            Fax: (312) 853-7036
                                            E-mail: jheller@sidley.com