E-FILED
Tuesday, 30 July, 2013  04:28:02 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| MICHELLE KNIGHT and JEFFERY BARTH, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| ENBRIDGE PIPELINES (FSP) L.L.C. and ) | |
| CCPS TRANSPORTATION, L.L.C., ) | |
| ) | |
| Defendants. ) | Case No. 12-CV-01244 |
| ) | |
| ) | |
| ) | |
| ENBRIDGE PIPELINES (FSP) L.L.C. and ) | |
| CCPS TRANSPORTATION, L.L.C., ) | |
| ) | |
| Counterclaimants, ) | |
| ) | |
| v. ) | |
| ) | |
| MICHELLE KNIGHT and ) | |
| JEFFERY BARTH, ) | |
| ) | |
| Counterdefendants. ) | |

## <u>MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>

Defendants-Counterclaimants Enbridge Pipelines (FSP) L.L.C. and CCPS Transportation L.L.C. (collectively referred to as "Enbridge") submit this memorandum in support of their motion for summary judgment pursuant to Fed. R. Civ. P. 56(a).

## <u>Introduction</u>

Enbridge proposes to construct a new underground pipeline to transport crude oil in interstate commerce.  That new pipeline, which will be known as the Flanagan South Pipeline, will cross a portion of Central Illinois before entering Missouri, en route to a terminal in Oklahoma.  The Illinois Commerce Commission has issued a Certificate in Good Standing to Enbridge with respect to the Flanagan South Pipeline and has ordered as follows: "IT IS FURTHER ORDERED that the

proposed pipeline is necessary and should be constructed, to promote the security or convenience of the public, pursuant to Section 8-503 of the Public Utilities Act."

Plaintiffs own a parcel of land in Livingston County, Illinois.  Enbridge owns an existing pipeline easement across that land pursuant to a 1952 Right of Way agreement.  In accordance with that 1952 agreement, Plaintiffs' land has had one crude oil pipeline installed and operating across it for more than 60 years.  Enbridge proposes to install the new underground crude oil pipeline as an additional line pursuant to the same 1952 agreement.  Plaintiffs seek to block construction of the new pipeline on their land.

By order dated June 19, 2013 (d/e 25), this court granted Enbridge's motion for judgment on the pleadings and denied Plaintiffs' cross-motion for judgment on the pleadings.  In that order, the court held as follows:  "The Court finds that the grants of Right of Way created by the 1952 Right of Way agreement are valid and enforceable according to the terms of that agreement, including the grant to 'construct and operate one additional pipe line alongside of said first pipe line on, over and through said land . . . to be subject to the same rights, privileges and conditions as the original line.'"

Only one narrow issue was left open by that June 19 order, which was the only thing that prevented the entry of a final judgment disposing of the entire case at that time:  "The additional relief sought by Plaintiffs in Paragraph B of the Request for Relief as to unsafe conditions is not addressed in the briefing and cannot be resolved solely on the pleadings."  Order at 5.  The "Paragraph B" referred to by the court reads as follows:

Wherefore, the Plaintiffs pray for the Court to make a declaratory finding which is consistent with the following:

*****

B.     The unsafe conditions of Flanagan South Pipeline were not contemplated at the time the 1952 easement was made; therefore the construction of the Flanagan South Pipeline is not authorized by the Exhibit A easement.

2

Complaint for Declaratory Judgment, d/e 1, at 11.

This request by Plaintiffs for a declaratory judgment that the new Flanagan South Pipeline cannot be built under the terms of the 1952 Right of Way agreement (which this court's June 19 order has already held to be valid and enforceable as a matter of law) is founded upon a series of wild and factually unsupported allegations elsewhere in their complaint, asserting that the liquid crude oil this new pipeline will carry, which Plaintiffs call "dilbit," is unsafe for transportation by pipeline. For example, in paragraph 28 of their complaint Plaintiffs assert that this crude oil is "often accompanied by a highly flammable and lethal sulfur based gas, which during any pipeline leak could cause immediate human harm if the sulfur-based lethal gas is inhaled or the dilbit is ignited." Similarly, in paragraph 29 of their complaint, Plaintiffs complain that if the crude oil in the new pipeline were somehow to be ignited, it might cause a "catastrophic explosion in a several hundred-foot radius around the pipeline, creating a crater on the surface of the land and vaporizing human life and homes or other farm buildings within the radius." At the same time, in paragraph 17 of their complaint, Plaintiffs admit that the initial pipeline built across their land pursuant to the 1952 Right of Way agreement, which is known as the Spearhead Pipeline, has already been carrying the very same "dilbit" crude oil for some period of time.

Plaintiffs are thus asking this court to adjudicate the safety of this new crude oil pipeline as a matter of Illinois law. They seek to have the court rule that the very type of oil already being transported across their land in the first pipeline is too dangerous to be transported in a second, brand new pipeline to be built under the same 1952 agreement. They seek to accomplish this by urging the court to apply Illinois principles of contract interpretation to the 1952 Right of Way agreement to find that the parties' predecessors who signed that agreement did not intend for a pipeline with such alleged potential safety issues to be built. In short, they want this court to engage

3

in a two-step analysis, presumably following extensive technical and expert discovery and a lengthy, complex trial involving issues of pipeline safety. Step One is to conjure up from whole cloth an unspecified set of safety regulations to govern pipelines built pursuant to that agreement and then insert those regulations into the 1952 Right of Way agreement under the guise of determining the parties' unwritten "intent." Step Two is to then analyze the technical details of the proposed new Flanagan South Pipeline, as well as the chemical and physical characteristics of the crude oil it will carry, and conclude that this pipeline, carrying that crude oil, will violate the unidentified safety standards imposed in Step One and hence cannot be built.

There are a variety of insurmountable hurdles in Plaintiffs' argument. As explained in Enbridge's previous briefing on its motion for judgment on the pleadings, the court's role under the law of contract interpretation is limited to determining the mutual, objective intent of the parties, *as expressed in the actual language they elected to use in memorializing their agreement*. The 1952 Right of Way agreement, however, is entirely silent on the subject of pipeline safety. Yet it is undisputed that an initial pipeline was built within the easement on the land at issue and has been carrying crude oil for more than 60 years, including "dilbit" in more recent years. This makes plain that the original parties had no intention of attempting to create as part of their 1952 Right of Way agreement a set of private, contractual pipeline safety regulations, but instead intended to leave pipeline safety regulation entirely in the hands of the responsible governmental entities. Plaintiffs want this court to disregard that decision by the contracting parties and rewrite the original agreement six decades after it was signed to engraft onto it some unspecified set of private pipeline safety regulations from an unidentified source.

If the court were to take up Plaintiffs' invitation to become the arbiter of the new crude oil pipeline's safety, the first dilemma would be determining what standards to use in judging the safety of the proposed new pipeline. Where the parties to an agreement have elected not to address

4

an issue such as safety regulations, a court is not free under the rubric of contract interpretation to insert into the parties' agreement its own personal views concerning that issue.  Nor is one of the parties to an agreement that is silent on an issue such as safety regulations free to unilaterally rewrite the agreement decades after the fact by inveigling the court into inserting that party's subjective, previously unexpressed views on that issue into the agreement.  The court also cannot look to Illinois common or statutory law as a source of oil pipeline safety regulations which can be inserted into the agreement, for the simple reason that Congress has expressly preempted the field of hazardous liquid pipeline safety regulation by the Pipeline Safety Improvement Act of 2002.  Under that Act, safety requirements concerning interstate oil transmission pipelines such as the Flanagan South Pipeline are the exclusive domain of the Secretary of the Department of Transportation, and a comprehensive system of federal regulations has been promulgated in the Code of Federal Regulations.  Those are the safety standards with which the Flanagan South Pipeline must comply, and under the separation of powers created by the constitution those regulations are administered and enforced by the Department of Transportation, as part of the executive branch, not by the district courts.

Because of this express preemption, states do not have authority to impose safety requirements on interstate hazardous liquid pipelines such as the Flanagan South Pipeline, and courts cannot apply state law to impose such safety requirements.  The upshot is that Plaintiffs' state law "safety" claims, which the court provisionally viewed as remaining open for further consideration in the wake of its June 19 order granting judgment on the pleadings in favor of Enbridge on all other issues, are preempted as a matter of federal law.  No material facts are in dispute concerning this express preemption, the existence of which is a pure matter of law that can be determined from the face of the statute.  Preemption provides a complete defense to Plaintiffs' state law "safety" claims as a matter of law.  Discovery and trial related to Plaintiffs' "safety"

5

claims would serve no purpose, but would be a monumental waste of the time and resources of the parties and the court.[1]  Accordingly, on the basis of such preemption, Enbridge is entitled to summary judgment, and what little survives of this case in the wake of the court's June 19 order should be brought to a prompt conclusion so that Enbridge's Flanagan South Pipeline project can move forward.[2]

## Undisputed Material Facts

1.      The Flanagan South Pipeline will be a pipeline.  Defendants' Answer and Counterclaim ¶30 (d/e 5, at p. 6); Plaintiffs-Counterdefendants' Answer to Counterclaim ¶10 (d/e 11, at p. 4).

2.      The Flanagan South Pipeline will transport liquid crude petroleum.  Defendants' Answer and Counterclaim ¶31 (d/e 5, at p. 6); Plaintiffs-Counterdefendants' Answer to Counterclaim ¶10 (d/e 11, at p. 4).

3.      The Flanagan South Pipeline will provide transportation in interstate commerce between Enbridge facilities near Pontiac, Illinois and Cushing, Oklahoma. Defendants' Answer and Counterclaim ¶30 (d/e 5, at p. 6); Plaintiffs-Counterdefendants' Answer to Counterclaim ¶10 (d/e 11, at p. 4).

4.      The 1952 Right of Way agreement expressly provides that the pipelines constructed pursuant to it may be used "for the transportation of liquids and/or gases."  Complaint, Exhibit A.

---

[1] The existence of express preemption is so clear in this situation, and the costs associated with unnecessary discovery and trial concerning the safety of "dilbit" and the Flanagan South Pipeline so great, that Enbridge asks this court in the event that the court finds that Congress somehow has not preempted Plaintiffs' state law "safety" claims, despite the clear and unequivocal Congressional intent to preempt as expressed on the face of the Act, to certify such an order for immediate interlocutory appeal to the Seventh Circuit pursuant to 28 U.S.C. § 1292(b).

[2] It should be noted that this disposition does not leave Plaintiffs without a remedy for any legitimate safety concerns they might have (as opposed to false "concerns" fabricated as a negotiating ploy).  Enbridge certainly does not claim any entitlement to build or operate an unsafe pipeline.  Enbridge is obligated  to follow the comprehensive and stringent federal regulatory scheme that is in place for the petroleum pipeline industry.  If the Flanagan South Pipeline does not conform to applicable federal pipeline safety standards and regulations, the government will not allow it to be built.  If there are alleged violations of applicable regulations after the line goes into operation and Plaintiffs are not satisfied with the response, there are administrative mechanisms built into the law for addressing those concerns.

5.     The 1952 Right of Way agreement does not contain any language that limits the types of "liquids and/or gases" that may be transported through those pipelines.  Complaint, Exhibit A.

6.     The 1952 Right of Way agreement does not contain any language purporting to regulate the safety of any "liquids and/or gases" that may be transported through those pipelines. Complaint, Exhibit A.

7.     The type of crude oil which Plaintiffs have identified in their complaint as "dilbit" is "considered fungible with crude oil."  Complaint, ¶17; Plaintiffs-Counterdefendants' Answer to Counterclaim ¶10 (d/e 11, at p. 4).

8.     "Dilbit" is a liquid crude oil that will flow through a pipeline.  Complaint, ¶18; Plaintiffs-Counterdefendants' Answer to Counterclaim ¶10 (d/e 11, at p. 4).

9.     The Spearhead Pipeline that crosses Plaintiffs' land was constructed and operated pursuant to the same 1952 Right of Way agreement under which the proposed Flanagan South Pipeline is to be constructed and operated.  Complaint, ¶10.

10.    The Spearhead Pipeline transports "dilbit" across Plaintiffs' land en route from Pontiac, Illinois to Cushing, Oklahoma using the same easement created by the 1952 Right of Way agreement in which the proposed Flanagan South Pipeline is to be constructed and operated. Complaint, ¶17.

**Argument**

Federal Rule of Civil Procedure 56(a) provides:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  As the Seventh Circuit has stated, "Rule 56 is a practical tool of governance.  Its purpose is to head off a trial, with all the private and public expenses that a trial entails, if the opponent (usually although not always the plaintiff) of summary judgment does not have a reasonable prospect of prevailing."  *Palucki v. Sears Roebuck & Co.*, 879 F.2d 1573, 1572 (7th Cir. 1989).  In this case, Plaintiffs have zero chance of prevailing on their so-called "safety" claims in this court because Congress has expressly preempted all such claims.  As a matter of law, issues related to the safety of interstate pipelines carrying crude oil are exclusively within the jurisdiction of the Department of Transportation.

The Supremacy Clause of Article VI of the United States Constitution grants Congress the power to preempt state or local law. U.S. Const. art. VI, § 2.  *E.g., Olympic Pipe Line Co. v. City of Seattle,* 437 F.3d  872, 877 (9th Cir. 2006).  Under the doctrine of preemption, one way in which a federal law can displace state law is through express preemption.  *Id.*  Express preemption exists where Congress enacts an explicit statutory provision that state law be displaced.  *Id.* at n.13. Congress has expressly preempted hazardous liquid pipeline safety regulation in the Pipeline Safety Improvement Act of 2002. 49 U.S.C. § 60101, *et seq.*  That Act contains a section entitled "Preemption," which provides in relevant part, "A State authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation."  *Id.* § 60104(c).

There can be no question that this express preemption provision of the Pipeline Safety Improvement Act of 2002 is applicable to the Flanagan South Pipeline.  First, the Act defines

8

"hazardous liquid" to mean "petroleum or a petroleum product." *Id.* § 60101(a)(4)(A).  Second, as used in the above-quoted preemption provision, "interstate" means "a place in a State and a place outside that State," 49 U.S.C. § 60101(a)(8)(B)(i); "pipeline facilities" means "a hazardous liquid pipeline facility," *id.* § 60101(a)(18), which is defined to include "a pipeline…intended to be used in transporting hazardous liquid," *id.* § 60101(a)(5); and "pipeline transportation" means "transporting hazardous liquid," *id.* § 60101(a)(18).  It is undisputed that the Flanagan South Pipeline will be a pipeline used to transport liquid crude petroleum in interstate commerce between a place in Illinois and a place outside Illinois.  These facts are mutually admitted  in the parties' respective pleadings.  Defendants' Answer and Counterclaim ¶¶30-31 (d/e 5, at p. 6); Plaintiffs-Counterdefendants' Answer to Counterclaim ¶10 (d/e 11, at p. 4).  Beyond the admissions in the pleadings, these facts are also irrefutably established as a matter of official public record, of which this court may take judicial notice.  ICC Docket 12-0347, Final Order, February 14, 2013, http://www.icc.illinois.gov/docket/files.aspx?no=12-0347&docId=193846

Congress has expressly preempted any effort by Plaintiffs to invoke state law contract interpretation principles as a means of imposing their own safety requirements on the Flanagan South Pipeline (presumably derived in some unexplained fashion from unspecified state common law).  The original parties to the 1952 Right of Way agreement agreed upon the construction of pipelines to be used "for the transportation of liquids and/or gases."  Complaint, Exhibit A.  The express language those parties agreed upon imposed no limits on the types of liquids and/or gases that could be transported in those pipelines.  *Id.*  Those parties elected not to address pipeline safety issues themselves in their agreement, but instead chose to leave safety regulation to the responsible governmental authorities.  A massive body of federal safety regulations governs the proposed Flanagan South Pipeline. *See* 49 C.F.R. Part 195, entitled Transportation of Hazardous Liquids by Pipeline, available online at http://ecfr.gpoaccess.gov/cgi/t/text/text-

idx?c=ecfr&sid=c8e5fb7b607d25bfa7cadef3d17e39c8&rgn=div5&view=text&node=49:3.1.1.1.11
&idno=49.  Congress has made the public policy decision that it is in the national interest for there

to be a single, uniform, nationwide set of safety regulations for pipelines such as the Flanagan South

Pipeline.  Those federal regulations are the product of that Congressional action, and Congress has

forbidden the insertion of state law safety standards into the mix.

Preemption under the Act entitles Enbridge to summary judgment.  *E.g., Olympic Pipe Line
Co. v. City of Seattle,* 437 F.3d  872, 877 (9th Cir. 2006).  As the court in *Olympic Pipe Line* stated,

"Hazardous liquid pipelines run through 21 states, and presumably through small and large plots of

land belonging to vast numbers of persons.  Were each of these landowners entitled to demand

compliance with their own safety standards, the clear Congressional goal of a national standard for

hazardous liquid pipeline safety would be thwarted."  *Id.* at 883.  Plaintiffs are asking this court to

become the instrument through which they thwart that clear Congressional goal.  This court is

obligated to decline that improper invitation.  Instead, the court should grant Enbridge's motion for

summary judgment on the ground that Plaintiffs' so-called "safety" claims that survived the court's

June 19 order are expressly preempted as a matter of federal law.

ENBRIDGE PIPELINES (FSP) L.L.C. and
CCPS TRANSPORTATION, L.L.C.

By:   /s/ John A. Heller
One of Their Attorneys

Gerald A. Ambrose
John A. Heller
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Christopher J. Spanos
Westervelt, Johnson, Nicoll & Keller, LLC
411 Hamilton Blvd.
Suite 1400
Peoria, Illinois 61602
(309) 671-3550

Dated:  July 30, 2013

**<u>CERTIFICATE OF SERVICE</u>**

      I, John A. Heller, do hereby certify that on July 30, 2013, I caused the foregoing Memorandum in Support of Motion for Summary Judgment to be filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the parties of record listed below:

Mercer Turner
Law Office of Mercer Turner
202 N. Prospect Road, Suite 202
Bloomington, IL  61704


                     By:    /s/ John A. Heller
                One of the Attorneys for Enbridge Pipelines (FSP)
L.L.C. and
                CCPS Transportation L.L.C.