# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | |
|---|---|
| MICHELLE KNIGHT and JEFFERY BARTH, | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 12-CV-01244 |
| ENBRIDGE PIPELINES (FSP) L.L.C. and CCPS TRANSPORTATION, L.L.C., | ) |
| Defendants. | ) |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiffs' response to Enbridge's motion for summary judgment fails to demonstrate any reason why summary judgment should not be granted. If anything, the response underscores why this case should be brought to a swift conclusion. The only matter remaining before the court is a pure issue of law: Congress has enacted a statute that expressly preempts any pipeline safety claims that survived this court's June 19, 2013 order upholding the 1952 Right of Way agreement. There is no dispute about the facts which establish the applicability of that statute to this case. Therefore, summary judgment should be entered on plaintiffs' preempted safety claims, and the entire case should then be disposed of via the entry of a Rule 58(a) final judgment in Enbridge's favor.

## Reply to Additional Material Facts

Plaintiffs assert as an additional material fact at page 3 of their response that they are defendants in a condemnation action brought by Enbridge in state court in Livingston County, Illinois, and they attach a copy of the condemnation complaint. The pendency of that Livingston County case is not disputed, but it is wholly immaterial to any issue in this federal diversity action, in which Enbridge has already been granted judgment on the pleadings with respect to the

validity and enforceability of its 1952 Right of Way agreement. Plaintiffs are mixing apples and oranges. As shown on the face of the complaint in the Livingston County condemnation action, it involves a completely new and different proposed pipeline right of way across plaintiffs' land. That new right of way has not yet come into existence and will not do so unless and until the Livingston County court enters a final judgment of condemnation. What plaintiffs apparently fail to grasp is that Enbridge possesses two entirely separate and independent alternatives for getting through their attempted blockade of the Flanagan South Pipeline.[1] Because of plaintiffs' efforts to block construction of Enbridge's new pipeline, Enbridge is pursuing both of its options on parallel tracks, the first via its counterclaim for a declaratory judgment concerning the 1952 Right of Way agreement in this court, and the second via its condemnation action for a proposed new right of way in Livingston County court.

**Option 1** is for Enbridge to exercise its right under the 1952 Right of Way agreement to "construct and operate one additional pipeline alongside of" the existing Spearhead Pipeline. That right is the *only* focus of this case, and this court has already granted judgment on the pleadings to Enbridge upholding the validity and enforceability of that contractual right. The right to build an additional pipeline alongside the Spearhead line in the future is a valuable asset belonging to Enbridge that will have continuing worth even if the presently proposed new line is ultimately built on a different route across the property via the condemnation process.

**Option 2** is to invoke the eminent domain power granted to Enbridge by the Illinois Commerce Commission and condemn a different right of way across plaintiffs' property, following a different route that does not involve any use of the additional line right contained in the 1952 Right of Way agreement. That potential new and different right of way is the *only* focus of the Livingston County state court action. If Enbridge is successful in that condemnation

---

[1] *See* Enbridge's Motion for Preliminary Injunction and Memorandum in Support. Docs. 28-29.

action, and if it then elects to utilize that new and different right of way to construct the Flanagan South Pipeline, it will, of course, be required to pay plaintiffs just compensation for that new right of way as determined by the Livingston County court. But in that event, Enbridge will also still own, and can use in the future for another project, the 1952 Right of Way agreement's grant of the right to construct an additional pipeline alongside the Spearhead Pipeline.

Enbridge is pursuing both options and need not make a determination at the moment whether to build the Flanagan South Pipeline alongside the Spearhead Pipeline under the 1952 Right of Way agreement, or pursuant to a potential new right of way that it ultimately may secure via a condemnation judgment in the Livingston County action. In the end, these are two separate cases involving wholly unrelated issues. Nothing in the condemnation case in Livingston County is material to the case before this court concerning the 1952 Right of Way agreement, and the existence of the Livingston County case certainly does not prevent this court from entering summary judgment on plaintiffs' pipeline safety claims on the ground that such claims are preempted as a matter of federal law.

## ARGUMENT

The only reason the parties are still before this court is because this court's June 19, 2013 order granting judgment on the pleadings to Enbridge concerning the validity and enforceability of the 1952 Right of Way agreement left open the possibility that certain state law claims might be lingering in the case concerning pipeline "safety" issues. As the court explained, it felt that the parties' briefing at that stage of the case did not address the purported safety issues sufficiently to allow them to be disposed of on the pleadings. Hence, under Rule 54(b), since some issues remained pending after the June 19 order, it was not possible at that time for the court to enter a Rule 58(a) final judgment. The perceived shortcomings in the prior briefing have now been

remedied.  In its present motion for summary judgment, Enbridge explains that any possible lingering state law pipeline safety claims are expressly preempted by federal statute.  That preemption dooms those state law claims.  Congress has left the court no choice but to grant summary judgment to Enbridge on such claims.  Having done so, there will no longer be any issues pending before the court and a final judgment disposing of the entire case should be entered pursuant to Rule 58(a).[2]

Enbridge's motion for summary judgment establishes that Congress has expressly preempted any and all possible state law claims related to the safety of interstate petroleum pipelines via the Pipeline Safety Improvement Act of 2002, 49 U.S.C. § 60104(c).  What this means is simple: To the extent that plaintiffs have indeed raised in their complaint some pipeline safety claims that could not be disposed of on the pleadings in the court's June 19 order, those claims are nonetheless beyond the scope of this court's jurisdiction and must be dismissed as a matter of law.  Congress has expressly placed matters of pipeline safety regulation under the exclusive jurisdiction of the Secretary of the Department of Transportation.  Under this statutory scheme, it is not the role of a district court to bar construction of an interstate petroleum pipeline that passes muster with the responsible federal regulators based on the notion that the pipeline might run afoul of some unspecified state law safety principles.

Plaintiffs' response to Enbridge's motion establishes only that they have no understanding whatsoever of the doctrine of federal preemption. They argue that because they

---

[2] "A declaratory judgment must be set out on a separate document containing its terms. Fed.R.Civ.P. 58(a)." *Specialized Seating, Inc. v. Greenwich Industries, Inc.*, 616 F.3d 722, 725 (7th Cir. 2010). Enbridge attaches hereto as Ex. A  its proposed form of Rule 58(a) final judgment.

rely solely upon state contract and property law as a basis for their safety claims,[3] and because they do not base their safety claims upon the Pipeline Safety Improvement Act,[4] those state law safety claims cannot be preempted. This, of course, is exactly the opposite of how federal preemption works. Whether based in state contract law, state property law, or state tort law, a federal statute has expressly declared that all such efforts to regulate interstate petroleum pipeline safety via state law are forbidden. That statutory preemption entitles Enbridge to summary judgment on all such safety-related claims. This was explained, among other places, in the court's decision in *Olympic Pipe Line Co. v. City of Seattle,* 437 F.3d 872, 877 (9th Cir. 2006), which was cited in Enbridge's opening memorandum. Plaintiffs' response does not even acknowledge the *Olympic Pipe Line Co.* case, much less attempt to explain why it is not applicable here. They choose to ignore *Olympic Pipe Line* because they recognize that it dooms their effort to avoid summary judgment. This court, of course, cannot overlook this important legal authority any more than it can overlook the express preemption language in the statute.

Plaintiffs' response concedes, as it must, all the factual underpinnings needed to establish the applicability of the Pipeline Safety Improvement Act of 2002 to the Flanagan South Pipeline. Pl. Resp. at 6-7. As they admit, it will be a pipeline transporting liquid crude petroleum in interstate commerce. *Id*. They thus cannot avoid the applicability of the Act's express preemption of all safety claims based on state law. 49 U.S.C. § 60104(c).

Plaintiffs' response also removes any possible doubt that they are seeking to employ state law in this case to impose the very sort of pipeline safety regulation that the Act has expressly

---

[3] As plaintiffs make clear, they are indeed relying upon state law in their effort to have this court regulate the safety of Enbridge's new pipeline: "The instant case is a contract and real property state law claim." Pl. Resp. at 4.

[4] "Plaintiffs will not further address the preemption defense in the instant case, because the Pipeline Safety Improvement Act of 2002 is not an issue in this case….The Pipeline Safety Improvement Act of 2002 is not mentioned either directly or indirectly in the Complaint…." *Id*.

5

preempted.  Throughout their response, they complain about the alleged possibility that Enbridge's new pipeline will create "an unsafe industrial corridor" (Pl. Resp. at 4); "where ultra-risky hazards exist" (*id*. at 5); and "where there will be major safety risk" (*id*.); as well as "risk of death, property damages, or unsolvable contamination" (*id*. at 6).   In an attempt to bolster their argument that they are entitled to invoke state law to regulate the safety of Enbridge's new pipeline, plaintiffs attach to their response two press releases concerning pipeline incidents in 2007 and 2010 involving another Enbridge affiliated company.  While inadmissible and irrelevant to this case, those documents actually confirm that, exactly as Congress intended when it inserted the express preemption language into the statute, it is the Secretary of the Department of Transportation, acting through the Pipeline and Hazardous Materials Safety Administration, who has exclusive authority to regulate interstate petroleum pipeline safety, not private individuals acting under the guise of state law.  These press releases illustrate federal pipeline safety preemption in operation.

In an effort to avoid preemption, plaintiffs seek to cloak their efforts to regulate the safety of Enbridge's new pipeline in the rubric of contract interpretation.  They offer a muddled argument that the new pipeline will exceed the scope of the 1952 Right of Way agreement because of the alleged safety concerns it will create.  In particular, they assert that the 1952 agreement mandates that the surface of the land above this underground pipeline will be farmed and that the new line must be built within 10 feet of the existing Spearhead line (Pl. Resp. at 4-5).  They allege that both of these conditions cannot be met because "[t]he mere crowding of the multiple pipelines, if constructed under the 1952 easement, creates an ultra-hazardous risk, which is inconsistent with farm operations." *Id*. at 6.  There are at least two fatal problems with this argument.  First, plaintiffs ignore CDIL-LR 7.1(D)(2)(b)(5), which requires that all

6

additional material facts asserted in response to a motion for summary judgment "must be supported by evidentiary documentation referenced by specific page." Nowhere among their response's various allegations about "risk of death," "major safety risk," "unsolvable contamination," or "inconsistent[cy] with farm operations" do plaintiffs supply even a shred of supporting evidence.[5] This utter failure to come forward with evidence to support these assertions about supposed safety problems not only violates this court's local rules, but it also flies in the face of the Supreme Court's holding that when presented with a properly supported summary judgment motion, the burden shifts to the nonmoving party to go beyond the pleadings and produce admissible evidence demonstrating that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 31, 324 (1986).

Second, and more importantly, these assertions highlight the preemption dilemma posed by plaintiffs' safety claims. It is impossible for this court to adjudicate plaintiffs' safety claims without doing precisely what Congress has said it cannot do—regulate the safety of an interstate petroleum pipeline by invoking principles of state law. To appreciate the problem, one has only to envision the trial this court will be required to conduct in the event it denies Enbridge's motion for summary judgment. Plaintiffs will presumably dredge up hired gun "experts" who,

---

[5] Plaintiffs' failure of proof extends to their factually unsupported assertions that no one in 1952 could have contemplated the construction of such an additional pipeline. This claim is belied on the face of the 1952 Right of Way agreement, which expressly provides for the construction of an additional pipeline for the transportation of *any* "liquids and/or gases," without limitation. A glance at the 1952 agreement reveals that it was the product of intense negotiations, with various standard printed terms stricken out and replaced or augmented with typewritten terms. Had the parties negotiated and come to terms on the sort of private safety restrictions plaintiffs now seek to impose, those terms would appear in the agreement. The agreement, however, is silent on the issue of pipeline safety. Instead of attempting to regulate the safety of pipelines built pursuant to the agreement by such private contractual means, the parties took the perfectly rational course of leaving the complexities of pipeline safety regulation to the government. As the Seventh Circuit has made clear, "What matters when litigation breaks out is what the parties actually signed." *Rissman v. Rissman*, 213 F.3d 381, 385 (7th Cir. 2000). Here, the parties' predecessors signed an agreement granting Enbridge the unrestricted right to do exactly what it proposes—install an additional pipeline to transport liquid petroleum in interstate commerce, subject to the existing comprehensive body of federal pipeline safety regulations. It cannot be said that this pipeline was not contemplated.

for a handsome fee, will speculate that had the original parties to the 1952 Right of Way agreement foreseen Enbridge's new pipeline, they would have included in their agreement strict private safety standards derived from state law (such as a prohibition on the transport of dilbit) and will then go on to opine that the new pipeline does not conform to such hypothetical standards, thereby giving rise to "an unsafe industrial corridor," or "major safety risk[s]," and other imagined calamities.  Enbridge, in turn, will call respected pipeline industry experts and federal regulators, who will offer unrebuttable testimony that the new line satisfies all of the exceptionally stringent federal safety requirements or else it could not be built.  To find for plaintiffs, the court would then have to conclude that proven compliance with federal safety standards is trumped by alleged violations of amorphous state law notions concerning interstate petroleum pipeline safety that the contracting parties never saw fit to write into their agreement. Congress, however, has forbidden this. The only correct result is the one reached by the court in *Olympic Pipe Line*.  Plaintiffs' state law safety claims are preempted, and Enbridge's motion for summary judgment should be granted.

In a last gasp attempt to stave off the entry of summary judgment, plaintiffs play the mootness card, claiming that because Enbridge has invoked its eminent domain rights in Livingston County court as one potential additional avenue for building the Flanagan South Pipeline, its separate right to build an additional pipeline under the 1952 Right of Way agreement is no longer at issue.  Hence, they argue, Enbridge's summary judgment motion is moot under Illinois law, citing an Illinois appellate court opinion. Pl. Resp at 7.  In the context of the present case, mootness is determined by federal law.  As the Supreme Court has held, a case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party, and as long as the parties have a concrete interest, however small, in the

8

...
...

...

outcome of the litigation, the case is not moot. *Knox v. SEIU*, 132 S. Ct. 2277, 2287 (2012). Here, it is undeniable that Enbridge has a continuing concrete interest in having plaintiffs' safety claims dismissed on the ground that they are preempted, which will make final this court's June 19, 2013 order upholding the validity and enforceability of the 1952 Right of Way agreement. The granting of Enbridge's pending motion for summary judgment would be the epitome of "effectual relief" because it would put to an end once and for all to plaintiffs' baseless attacks on the 1952 Right of Way agreement. Neither this case nor Enbridge's pending motion are moot.

## CONCLUSION

Summary judgment should be entered for Enbridge on plaintiffs' safety claims. Those claims have been preempted by Congress. There is no valid argument against preemption. The entire case should then be disposed of via the entry of a Rule 58(a) final judgment in Enbridge's favor.

ENBRIDGE PIPELINES (FSP) L.L.C.  
and CCPS TRANSPORTATION, L.L.C.

By: /s/ John A. Heller  
One of Their Attorneys

Gerald A. Ambrose  
John A. Heller  
Sidley Austin LLP  
One South Dearborn  
Chicago, Illinois 60603  
312-853-7000

Christopher J. Spanos  
Westerveld, Johnson, Nicoll  
   & Keller, LLC  
411 Hamilton Boulevard, 14th Floor  
Peoria, Illinois 61602  
309-671-3550

Dated: August 27, 2013

# Exhibit A

Enbridge's Proposed Rule 58(a) Final Judgment

AO 450 (Rev. 11/11) Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Central District of Illinois

| KNIGHT, et al. | ) |
|---|---|
| *Plaintiff* | ) |
| v. | ) Civil Action No. 12-CV-01244 |
| ENBRIDGE PIPELINES (FSP) L.L.C., et al. | ) |
| *Defendant* | ) |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☐ the plaintiff *(name)* _____ recover from the defendant *(name)* _____ the amount of _____ dollars ($ _____ ), which includes prejudgment interest at the rate of _____ %, plus post judgment interest at the rate of _____ % per annum, along with costs.

☐ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____ recover costs from the plaintiff *(name)* _____.

☑ other: The Court declares that the grants of Right of Way created by the 1952 Right of Way agreement are valid and enforceable according to the terms of that agreement, including the grant to construct and operate one additional pipe line alongside of said first pipe line on, over and through said land.

This action was *(check one)*:

☐ tried by a jury with Judge _____ presiding, and the jury has rendered a verdict.

☐ tried by Judge _____ without a jury and the above decision was reached.

☑ decided by Judge James E. Shadid _____ on a motion for judgment on the pleadings and motion for summary judgment

Date: _____   *CLERK OF COURT*

_____
*Signature of Clerk or Deputy Clerk*

**CERTIFICATE OF SERVICE**

      I, John A. Heller, do hereby certify that on August 27, 2013, I caused the foregoing Reply Memorandum in Support of Motion for Summary Judgment to be filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the parties of record listed below:

Mercer Turner
Law Office of Mercer Turner
202 N. Prospect Road, Suite 202
Bloomington, IL  61704

                                  By:  /s/ John A. Heller
                                  One of the Attorneys for Enbridge Pipelines (FSP)
                                  L.L.C. and CCPS Transportation L.L.C.